**SAFE DEPOSIT & TRUST CO. OF BALTIMORE v. TAIT, Collector of Internal Revenue.**

**Nos. 4487, 4651.**

District Court, D. Maryland.
March 27, 1933.

the whole value thereof or some part of the whole value, are respectively properly included in the computation of the gross estate. They are as follows: (1) Certain preferred and common stock of the Marine Securities Company valued at $193,004, transferred to his wife by the decedent more than two years prior to his death; (2) certain real estate owned in fee simple by the decedent at the time of his death and valued at $100,000; (3) certain Baltimore City stock (constituting funded indebtedness of the city of Baltimore) standing in the names of the decedent and his wife as joint tenants, valued at $103,458.81. Different questions arise as to these three items of property and will be separately discussed.

1. *The Marine Securities Company Stock.* —The applicable provisions of the 1921 Revenue Act are as follows:

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or. after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

The issue here is one of fact only, whether the stock transferred by the decedent to his wife was "in contemplation of * * * his death." The transfer was absolute both in form and in effect, the stock certificates theretofore standing in the name of the decedent having been transferred on the books of the corporation into the name of the wife, and new certificates duly issued therefor and delivered to her agent. Thereafter dividends on the stock so transferred were paid to her. This transfer was effected in December, 1920; the decedent died July 24, 1923.

The principles of law to be applied in determining the question of fact have recently been authoritatively stated by the Supreme Court in United States v. Wells, 283 U. S.

Arthur W. Machen, Jr., of Baltimore, Md., for plaintiff.

Simon E. Sobeloff, U. S. Atty., and Charles G. Page, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The above consolidated cases at law have been tried to the court on the pleadings and testimony, a jury having been waived. Certain questions of law arising on demurrers to the pleadings have been ruled upon. (D. C.) 54 F.(2d) 383, 387.

The object of the suits is to recover alleged overpayment of federal estate taxes under the Revenue Act of 1921, c. 136, 42 Stat. 227, 277, 278. Three separate items of property are involved, the questions being whether

102, 51 S. Ct. 446, 75 L. Ed. 867, and re-announced in Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358; 76 L. Ed. 772. Very shortly stated, the principle of law is that the trier of fact must test the testimony by finding the dominant motive which actuated the transferor. Thus, "contemplation of death" as used in the statute means "the thought of death as a controlling motive prompting the disposition of property." But if the dominant motive is "found to be related to purposes associated with life rather than in distribution of property in anticipation of death," then the property so transferred is not within the reach of the statute. And the facts and circumstances of each case "must be carefully scrutinized to detect the dominant motive of the donor in the light of his bodily and mental condition."

■ Applying these principles, I have no difficulty in reaching the conclusion, and find as a fact from the testimony, that this transfer of stock was not made in contemplation of death. It is not necessary to detail the testimony at any great length. The facts and circumstances of this case are, of course, peculiar to itself. The controlling facts, however, may be briefly stated to show the basis for the conclusion of fact.

The decedent was Thomas H. Bowles, who, for a period of ten years or more, was a well-known figure in the financial and banking life of Baltimore City. He was interested as a stockholder in the Baltimore Dry Docks & Shipbuilding Company and, in association with others, organized and acquired a large percentage of the preferred and common stock of the Marine Securities Company, which was a holding company based on the properties of the former company in Baltimore. The financial and legal transactions which resulted in his acquisition of the Marine Securities Company stock were somewhat complex and involved some litigation. In addition to legal advice he naturally had the sympathy, interest and advice of his wife in the transaction which he apparently regarded as of value at the time because on one occasion during its progress or when nearing its conclusion, he presented her with a box of roses bearing his card and addressed (doubtless with amiable pleasantry), "To my associate counsel." His widow as a witness in the case testified also that he had said at the time that he intended to give her one-half of the stock but preferred not to do so while he still had outstanding indebtedness which, at that time, amounted to the considerable sum of about $300,000 owing to banks and others, growing out of related financial trans-actions. This indebtedness was not finally liquidated until some time in 1919. In the meantime, in 1918, Mr. Bowles' health became undoubtedly seriously impaired and by the advice of his counsel he relinquished active personal participation in business affairs and turned over the management of his very considerable property to the Safe Deposit & Trust Company of Baltimore as his agent. About the same time he executed his will, making his wife the chief beneficiary of his then ample estate worth possibly a million and a half dollars, and also made her the beneficiary (without power of revocation) of his life insurance, also making the Safe Deposit & Trust Company of Baltimore his executor.

The above facts have been related because they doubtless furnish, in some measure at least, a background for the subsequently consummated gift of the stock in December, 1920. But I find that the immediate and dominant motive for the transfer when it was actually made was to lessen federal income taxation. Owing to war conditions and the greatly enhanced value of all shipping interests, the stock of the Marine Securities Company had become valuable probably far in excess of even anticipation, and in the latter part of 1920 it became known that during 1921 there would be distributed to stockholders approximately $1,000,000, representing a dividend of about 52 per cent. on the capital stock. The amount of this dividend which would have been payable on the whole stock held by Mr. Bowles was approximately $163,000. A business associate referred to the former promise to his wife and advised that it should be then consummated by the gift to her. Correspondence then ensued between Mrs. Bowles (writing for her husband) and the Safe Deposit & Trust Company in December 1920, as a result of which one-half of Mr. Bowles' entire stock was transferred to his wife. Contemporaneous correspondence amply confirms the testimony of Mrs. Bowles to the effect that the important and dominant motive for the transfer was to lessen prospective income taxes arising from this very substantial dividend. The actual net saving in the aggregate income taxes of both husband and wife for the following year was $27,218.60.

Counsel for the defendant urges, on the question of fact, that the health of Mr. Bowles, both mental and physical, was such that I should find as a reasonable inference that contemplation of death was the dominant motive. Mr. Bowles' health from 1918 to the time of his death was admittedly bad.

But there is no evidence of any crisis or marked change in his condition, either mental or physical, at or about the time of the transfer. Nothing was said or done by him, so far as the testimony reveals, at that time to indicate the dominant motive of the transfer of the stock was contemplation that his death was imminent, and nothing indeed seems to have been said which indicated in any way that he had the fact of death in contemplation at all. His death did not occur until two years and six months after the transfer and then resulted immediately from a cerebral hemmorhage which followed an extensive dental operation. At the time of his death he was sixty-eight years of age. The value of the stock transferred was approximately 10 per cent. of the value of his whole property.

I conclude, therefore, that this item of property was improperly included by the Commissioner in the valuation of the gross estate.

2. *The Item of Real Estate.*—The applicable section of the taxing act is as follows:

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate;

"(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy."

■■ The Commissioner included the whole value of the real estate in determining the gross estate. But subsequently the Supreme Court decided in Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156, that under this statute Missouri real estate, not by the law of that state subject to the payment of the expenses of administration, could not be included in the gross estate. Heretofore under the pleadings in this case the defendant has contended that there is a material difference between the Maryland and Missouri laws affecting real estate in consequence of which Crooks v. Harrelson is not applicable here. I have ruled against this contention. However, the defendant now contends that, even if the Maryland statutory law does not of itself subject decedent's

real estate to the payment of administration expenses, nevertheless the same result, in gratification of the taxing statute, is reached in this particular case by the provisions of the decedent's will. The contention rests upon an insecure foundation. I do not construe the will as subjecting the real estate to the payment of administration expenses. There is no express direction to that effect and none to be reasonably implied. True it is that there is a restricted power of sale given to the executor (which would probably include real estate) for reinvestment, and possibly for other necessary purposes, but no sale of the realty was in fact made, and the personalty was apparently ample to pay all charges and expenses. It is the contention of the defendant that this limited power of sale of the real estate brings it within the reach of the statute. No authority is cited for this proposition. I am unable to accept it as correct. A somewhat similar argument was rejected in Crooks v. Harrelson, 282 U. S. 55, 62, 51 S. Ct. 49, 75 L. Ed. 156. The meaning of the statute seems to be that real estate of the decedent to be included in the gross estate must be subject to the payment of administration expenses by the general law of the state. In my opinion it is not sufficient if this result is reached only by the terms of the decedent's will. The statute must, I think, be construed as intended to operate uniformly and not depend upon the effect of differing provisions of wills of particular decedents.

■ Although the *decedent's interest* in the real estate is excluded by the terms of section 402 (a), nevertheless the interest therein of the surviving spouse is to be included by 402 (b); and this is conceded by counsel for both parties, but they differ as to the extent of the interest which is so included. For the plaintiff it is contended that the taxable interest is limited to the value of the widow's common-law right of dower, that is, a life estate in one-third of the realty; while the defendant contends that in this particular case by reason of certain Maryland statutes, the interest to be included is equal to one-half of the whole value of the real estate.

The language of subsection (b) is: "To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, * * * or by virtue of a statute creating an estate in lieu of dower." It is to be noted that the language of the statute is in the alternative, and the question as to which alternative is to be here adopted presents a question of statutory construction which, so far as I am advised, has

not been definitely determined yet and is, I think, not free from difficulty. The practical difference in monetary value in this case is considerable as it is agreed by the parties the value of the widow's common-law dower in the property was $11,707.36, while the value of one-half of the whole property was $50,000. The statute must be construed in the light of the general legal knowledge of the law of marital rights in real estate throughout the nation, and the determination of the value of the interest of the surviving spouse must depend in each case upon the local law of the particular state. It is possible that the estate of dower still exists in some states unaffected by statute, but in many, if not most, of the states it is now to some extent modified or affected by statutes. In some states it is abolished and a statutory estate of generally larger value substituted in lieu thereof. In other states, as in Maryland, common-law dower is preserved, but the widow, *at her election,* may take, *as heir,* a larger estate in the realty. This she takes by *descent,* as contrasted with true dower, which she took *by purchase.* An important practical difference lies in the rights of the husband's creditors, to which true dower is superior. See 1 Tiffany Real Property, §§ 208, 230, 236; 19 C. J. 458–461, 594. In states where the widow's only right in the husband's real estate is the common-law right of dower there seems to be no difficulty in applying the statute. Similarly, in states where the common law of dower has been abolished and in lieu thereof a somewhat similar statutory estate created in favor of the wife, there is also no difficulty in application. The difficulty arises in states where, like Maryland, the widow's common-law right of dower as such is preserved but at her election she may waive her dower rights and, instead or in lieu thereof, take an interest in the husband's real estate greater in value than the common law dower.

In this connection it is important to briefly review the Maryland law as to the rights of a married woman as inchoate dower and her rights as widow in her husband's real estate. The statutes are to be found in Bagby's Annotated Code of Maryland, article 45, title, "Husband and Wife," §§ 6 and 12; article 46, title "Inheritance," §§ 2, 3, and 4; and article 93, title "Testamentary Law," §§ 127, 310, and 311. Very briefly stated, these statutes provide in effect that a married woman has dower inchoate in her husband's real estate during his lifetime which may be relinquished during their joint lives by joint deed or by her separate deed, but may not be de-

feated by the husband's conveyance during his own lifetime without her joinder; and upon the death of the husband intestate she "shall take as heir" the same share in his realty as in his personal property, unless she elects to take dower; provided, however, that this last-mentioned statutory right as heir "shall not be construed as abolishing" the estate known as the dower of a widow, although her dower right may be barred by provisions in the husband's will to that effect unless, within six months from the grant of administration on his estate, she files a written renunciation of the will and an election to take in lieu thereof her dower in lands or her legal share thereof as above provided which, in the absence of a surviving child or descendant (as in this case), would be one-half interest in the whole. The widow's common-law right of dower is not subject to claims of creditors of the husband, but her statutory interest in his estate is subject to debts and costs of administration; that is to say, if the widow elects to take as heir the same share of real estate to which she is entitled as distributee in the personal property, she takes only a fractional interest in the net estate. This is, I think, the necessary effect of the statute although I have not found any recent decisions of the Maryland Court of Appeals expressly so holding.

█ In this particular case the decedent died testate leaving a will under which his wife was the chief beneficiary, and she did not renounce the will and did not elect to take dower in lieu of the testamentary provisions. Under the will she was given a life estate only in the residue of the testator's property, but with general power of appointment. If she had renounced the will she would have been entitled to receive absolutely as heir one-half of the value of the real estate, the personal property being amply more than sufficient to pay all debts and costs of administration. There is no contention by the defendant that the value of the widow's interest in this real estate under the will is the measure of the taxable interest under § 402 (b).

The question to be decided is whether the taxable interest in the property is to be measured by her dower right or her right as heir in one-half of the property absolutely. Or, in other words, was the right given to her to take one-half of the real estate "as heir," by renouncing the will (which she did not do) in the language of the section, "an estate in lieu of dower," and, if so, is the statute to be construed as taxing the dower interest only or the larger statutory interest?

In the first place, as a matter of terminology, it is not entirely appropriate to speak of the widow's elective right to take under the statute as an heir as "an estate in lieu of dower." Thus the interest that she takes on renunciation of a will is referred to in section 311 of article 93 as her "legal share" of the realty. And the context would seem to imply that the word "estate" is here used in its technical legal sense which would not aptly describe an interest taken by her as heir.

But there is a more important consideration which flows from the construction of subsection (b), together with subsection (a). (b) was, I think, clearly intended to be only complementary to (a), so that the whole interest of both husband and wife should be included in the valuation of the gross estate. In passing, it is to be noted that the original federal estate taxing act of 1916 (39 Stat. 777, § 200 et seq.) did not include what is now subsection (b) covering the interest of the surviving spouse. It resulted that the interest in real estate to the extent of the widow's dower could not be included in the value of the gross estate, as was held in Schuette v. Bowers, 40 F.(2d) 208, 210 (C. C. A. 2), and in Randolph v. Craig, 267 F. 993 (D. C. N. D. Tenn.), and Briscoe v. Craig, 32 F.(2d) 40, 41 (C. C. A. 6). Section (b) was, however, added in the Revenue Act of 1918, 40 Stat. 1097, § 402, and carried forward in the same language in the act of 1921. The reasonable inference is that subsection (b) was inserted by the amendment merely to supplement the *deficiency* of subsection (a). See Allen v. Henggeler, 32 F.(2d) 69, 71 (C. C. A. 8). But (a) in the 1916 act [section 202 (a)] was effective to cover the whole interest save only to the extent of the widow's dower. It is quite unreasonable, I think, to attribute to Congress by the amendment of 1918 supplying subsection (b) an intent to include in the gross estate as the sum of (a) and (b) a value *greater* than 100 per cent. of the value of the property owned by the decedent. Therefore, in construing and applying subsections (a) and (b) jointly, a construction of (b) is hardly possible which would attribute to it a meaning greater than the deficiency of (a) in respect to the whole value of the property.

The application of the section in this particular case is complicated by the resulting effect of the decision of the Supreme Court in Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156. But this result in relation to the general scope of the act would seem to be accidental and limited in its oper-ative effect to realty in those states having laws similar to Maryland and Missouri. It is true that apparently an incongruity results (as noted in Crooks v. Harrelson, 282 U. S. 61, 51 S. Ct. 49, 51, 75 L. Ed. 156), in that the major interest of the decedent in the realty is not to be included in the computation of the gross estate under subsection (b) but the minor interest of the wife is to be included. However, as was pointed out there, the courts must deal with the taxing statutes as they are written and the incongruity, if it exists, is for Congress to remedy and not for the courts; and indeed Congress has in this respect amended the law in the Revenue Act of 1926, § 302 (26 USCA § 1094), by eliminating the qualifying phrase in subsection (a) which caused the exclusion of real estate under the acts of 1918 and 1921 as applied in Crooks v. Harrelson.

But while the decedent's own interest in the real estate, in states having laws like Maryland and Missouri, was legally entitled to escape this taxation under revenue acts prior to 1926, nevertheless subsections (a) and (b) were clearly intended to be of uniform application. And it is, I think, impossible to apply subsection (b) in such a way that it has a different meaning in Maryland and Missouri than it would have in other states where realty was subject to "expenses of the administration" of the decedent's estate. That is to say, the effect of subsection (b) is merely complementary to the scope of subsection (a) whether the latter is applicable to real estate in a particular state or not. In this case, as has been said, the monetary value of the widow's dower interest is $11,-707.36. Save for the accidental consideration that realty in Maryland is not subject to the expenses of administration of a decedent's estate, the extent of the interest of *the decedent* in the real estate would have been included in the value of the gross estate to the extent of the whole value of the property excepting only the value of the widow's dower. The extent of the widow's dower is about 12 per cent., and the extent of the decedent's interest would, therefore, have been about 88 per cent. if it had been taxable. The contention of the defendant is that the widow's interest in this case must be taken as 50 per cent. of the whole value which, in addition to the decedent's interest, would result in taxation of 138 per cent. of value of the whole property, save for the accidental consideration that the decedent's interest under Crooks v. Harrelson must be eliminated. I do not think it is possible to apply the statute in this way.

My attention has not been called to any case where the problem has been presented in the form it here takes. Obviously the question was not likely to arise except in states having laws affecting real estate like those of Maryland and Missouri or prior to the decision in Crooks v. Harrelson decided November 24, 1930. There is, however, a series of cases in the Eighth Circuit Court of Appeals arising under Missouri and Nebraska laws, which approach the subject from a different angle. Thus in United States v. Waite, 33 F.(2d) 567 (certiorari denied 280 U. S. 608, 50 S. Ct. 157, 74 L. Ed. 651), and in Crooks v. Loose, 36 F.(2d) 571 (arising under the Missouri law), and in Allen v. Henggeler, 32 F.(2d) 69, and United States v. Dietz, 33 F.(2d) 576 (arising under the Nebraska law), the commissioner had included the whole value of the property without deducting the interest of the surviving spouse, and the taxpayer sought to recover for an alleged overpayment which was denied in all the cases. All of these cases (except the last) were decided prior to Crooks v. Harrelson; none of them involved the situation we have here; and in all of them the effort of the taxpayer was to *deduct* the value of the wife's interest from the whole value of the property included in the gross estate by the commissioner. Here, however, as I have ruled, following Crooks v. Harrelson that the value of the decedent's interest must be excluded from the computation of the gross estate, the defendant's contention is in effect an effort to *add* to the gross estate the value of the widow's interest. The laws of Missouri and Maryland (and to a less extent of Nebraska) with respect to the widow's alternative rights in dower or elective shares of her husband's estate are somewhat similar, and it seems to have been contended in these cases by the taxpayer (and possibly assumed by the court) that the extent of the widow's rights should be measured by the value of her greater statutory share rather than of her common-law dower right, but there was no occasion for the determination of that exact question by the court. I have endeavored to carefully consider the effect of those decisions with relation to the question here discussed, but in view of the different conditions under which those cases arose, I do not conclude that they are to be taken as decisive of the present case. Carter v. United States (D. C. E. D. Mo.)[1] decided December 15, 1932, more nearly presented the situation we have here, and it is possible that the view there expressed as to the extent of the taxable

---

[1] Oral opinion.

value of the widow's interest may not be reconcilable with the view here taken, but the question there seems not to have been squarely presented by the pleadings and possibly therefore was not largely discussed. It may also be noted that the Missouri statute, in giving the widow the elective right to take a child's share of the realty, expressly describes it as taken "in lieu of dower," as was pointed out in the Waite Case (C. C. A.) 33 F.(2d) 567, 573; which the Maryland statute does not do, although I do not attribute great weight to this merely verbal difference.

In my opinion it was the legislative intent by (b) to tax only the *inchoate* interest of the surviving spouse which existed during the decedent's life, made *consummate* by the latter's death; and not the interest *created after death* by an election to take *as heir*. This construction is consistent with the true nature of the tax as recently emphasized—that is a death duty, rather than a succession or legacy tax. Young Men's Christian Ass'n v. Davis, 264 U. S. 47, 50, 44 S. Ct. 291, 68 L. Ed. 558; Tyler v. United States, 281 U. S. 497, 502, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758. In Maryland, common-law dower, as still preserved, alone meets this test. In other states where common-law dower has been abolished, the statutory estate in lieu of dower may also meet the test. But it is unreasonable to infer that Congress meant to tax in one state *either* common-law dower *or* a larger statutory estate. And such construction would introduce an uncertainty or ambiguity which under familiar principles affecting taxing statutes would have to be solved in favor of the taxpayer. Crooks v. Harrelson, 282 U. S. 55, 61, 51 S. Ct. 49, 75 L. Ed. 156; Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211.

I conclude, therefore, as to this item of real estate, that the extent of the widow's interest to be included in the gross estate is $11,707.36, and not $50,000.

3. *The Item of Baltimore City Stock Held as Joint Tenants.*—The value of this item is $103,458.81. It was not included by the commissioner as a part of the gross estate; but it is now said by the defendant that the commissioner's original ruling has been changed by reason of the subsequent decision of the Supreme Court in Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758; and while it is now too late for the commissioner to make an additional assessment including the value of this item of property, nevertheless he is

entitled to deduct from any recovery by the plaintiff in this case which would otherwise be proper the tax properly computable on the value of this item, in accordance with the decision of the Supreme Court in Lewis v. Reynolds, 284 U. S. 281, 52 S. Ct. 145, 76 L. Ed. 293. The plaintiff concedes that the procedure is correctly stated but denies that the item is properly taxable.

■ With respect to this particular item of property, the testimony in the case shows the following history: In 1910 Mr. Bowles bought a country place near Baltimore known as "Westburn," the deed for which was put in the name of himself and wife, thus creating, under the Maryland law, *an estate by the entireties.* In 1920, the property was sold and conveyed to the purchaser by joint deed of the husband and wife and the cash proceeds of sale were received and invested by the Safe Deposit & Trust Company of Baltimore acting as agent for the husband and wife, in United States Victory notes in negotiable coupon form, and in turn in 1921, and prior to the effective date of the 1921 Revenue Act, these notes, with the approval of Mr. and Mrs. Bowles, were sold and the proceeds reinvested in the Baltimore City stock, the written certificate therefor being issued in the names of Mr. and Mrs. Bowles as *joint tenants* and to the *survivor.* There is no testimony to indicate why the stock was registered in the name of Mr. and Mrs. Bowles as *joint tenants.* It is indisputably true that under the Maryland law the nature of the title to "Westburn" was a tenancy by the entireties and it seems clear from the Maryland decisions that the nature of the interest of the parties in the cash proceeds of the sale of the property and also in the reinvestment thereof in the form of negotiable Victory notes was likewise as tenants by the entireties. Brell v. Brell, 143 Md. 443, 122 A. 635; Whitelock v. Whitelock, 156 Md. 115, 143 A. 712; Masterman v. Masterman, 129 Md. 167, 98 A. 537; Brewer v. Bowersox, 92 Md. 567, 48 A. 1060. It is quite possible that the change in the form of the title holding evidenced by the registration of the Baltimore City stock was an inadvertence on the part of some representative of the Safe Deposit & Trust Company, as agent. But as to this, there is an entire failure of proof.

In these circumstances three possible views are advanced as to the taxability of this item of property. They are (1) That the item cannot be included at all in the computation of the gross estate; (2) that it must be included as to its whole value; and (3) that it should properly be included for one-half of its whole value. And it must be admitted, under the present state of the authorities, some support can be found for any one of these possible views. It is, however, necessary to make a choice between them.

■ The defendant contends for the view that this item of property is taxable to its full value; and to accomplish this, his counsel maintains that, in determining the *taxability* of the item, the *date of acquisition* of the property must be fixed as of the time when the Baltimore City stock was issued to Mr. and Mrs. Bowles as joint tenants; but nevertheless for the determination of the *extent* to which it is taxable, reference must be made to the history of the property beginning with its original acquisition in 1910, to show that it was wholly paid for by the decedent. The objection to this view is that in effect it treats the item of property as a continuous holding from 1910 and thus requires a retrospective operation to be given to the Revenue Act of 1921, a result which was refused to be given by the Supreme Court to the similarly worded Revenue Act of 1916, neither of said acts having a retroactive provision, which first appeared in the Revenue Act of 1924. Knox v. McElligott, 258 U. S. 546, 42 S. Ct. 396, 66 L. Ed. 760; Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454. But counsel for the defendant urges that the unanimous decisions of the Supreme Court in these two cases has been impliedly, although not expressly, overruled by Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758. And it is said that the judicial philosophy stated in that case as to the nature of the tax, in emphasizing the death of the decedent as the "generating source" of the property rights of the other joint tenant, impliedly repeals in effect the former cases by putting the emphasis on the *date of the death* after the act and thus rendering unimportant the *date of acquisition* of the property and the vesting of rights prior to the act. But I am unable to accept this view as to the effect of the Tyler Case. I cannot ignore the fact that in that case the court plainly delimited the exact point for decision in saying (page 500 of 281 U. S., 50 S. Ct. 356, 358): "In each case the estate was created after the passage of the applicable act, and none of the property constituting it had, prior to its creation, ever belonged to the surviving spouse." And again at page 501 of 281 U. S., 50 S. Ct. 356, 358: "The sole question is in respect of its [the statute's] constitutional validity." The principal attack in that case on the application of the

statute to the particular item of property, a tenancy by the entireties, was that the tax was a direct tax but not apportioned as required by the Constitution. The reasoning of the court, with reference to the nature of the property and the effect of the death of one of the joint owners, is directly in answer to this constitutional attack; the concluding sentence with reference thereto being (page 504 of 281 U. S., 50 S. Ct. 356, 359): "And in that view the resulting tax attributable to such property is plainly indirect." The decision seems to me to involve no question regarding retrospective legislation, either in the actual case presented or in the reasoning on the constitutional point. The earlier cases are not referred to. They involved a question of *construction* of the revenue act, while the Tyler Case involved only the question of the *constitutionality* of the act in prospective operation. In Phillips v. Dime Trust & S. D. Co., 284 U. S. 160, 166, 52 S. Ct. 46, 47, 76 L. Ed. 220, the contention of the government was the same as that now advanced by defendant's counsel, as to the effect of the Tyler Case. But as to this, Mr. Justice Stone said: "The government argues that the tax was laid on the devolution of rights upon the wife at the death of her husband after the passage of the act, and that therefore the statute was not applied retroactively, even though the estate was created before its enactment. Without foreclosing consideration of this contention at another time, we find it unnecessary now, in view of the facts of the present case, to pass upon it." And I also note that Mr. Justice Stone in his dissenting opinion in Heiner v. Donnan, 285 U. S. 350, 52 S. Ct. 358, 370, 76 L. Ed. 772, said: "A very different case would be presented if the taxed gift were made before the enactment of the taxing statute, and many years before the death."

Gwinn v. Commissioner, 287 U. S. 224, 53 S. Ct. 157, 77 L. Ed. ——, may, I think, not be regarded as changing the rule against retrospective operation by construction because that case was decided under the Revenue Act of 1924 in which section 302, subsection (h), 26 USCA § 1094 note, was expressly retroactive. Third National Bank v. White, 45 F.(2d) 911 (D. C. Mass.), affirmed (C. C. A.) 58 F.(2d) 1085, and affirmed per curiam by the Supreme Court, December 19, 1932, 53 S. Ct. 290, 77 L. Ed. ——, is subject to the same comment.

I conclude, therefore, that the defendant's contention in this case that the whole value of the joint estate must be included in the gross estate for taxation must be rejected. As the Supreme Court has so far not approved the retrospective operation of the 1921 act, I do not feel at liberty to do so.

The plaintiff's contention is that no part of the value of the joint estate may be included in the gross estate for taxation because it was merely a reinvestment of the jointly owned property originally acquired in 1910. A defect in this view of the matter is that it ignores the change in the nature of the title to the property occurring in 1921. Under the Maryland law it is clear that the original acquisition of "Westburn" in 1910 created a tenancy by the entireties in Mr. and Mrs. Bowles as husband and wife. And this same nature of the holding existed in the proceeds of sale of the property made in 1920, and when reinvested in negotiable coupon bonds thereafter. But when the latter were sold and the proceeds reinvested in Baltimore City stock, there was a definite change made in the holding from "tenants by the entireties" to "joint tenants." In Maryland, husband and wife may be joint tenants of property if it is expressly so denominated. Wolf v. Johnson, 157 Md. 112, 145 A. 363.

There are important differences between a tenancy by the entireties and a joint tenancy. In the former no conveyance of or incumbrance on the property can be effected without joint consent and the property is not subject to the debts of either alone and may not be partitioned except by joint consent. But in a joint tenancy, while the right of survivorship exists, the property may by appropriate legal proceedings be subjected during the joint lives to the debts of one or may be partitioned. There is no evidence in the case to show that the change in the nature of the holding was not authorized or ratified by Mr. and Mrs. Bowles. It is possible that the change made by their agent was unintentional or inadvertent. But both survived for more than two years thereafter without repudiation of the agent's act, and in the absence of evidence showing an unintentional mistake, I do not feel warranted in finding it. In this respect the burden of proof is on the taxpayer. Phillips v. Dime Trust & S. D. Co., 284 U. S. 160, 167, 52 S. Ct. 46, 76 L. Ed. 220.

Furthermore, I think there are valid objections to looking beyond the creation of the particular estate in the property which existed at the time of the death of the decedent. In the practical application of the statute the commissioner naturally deals with the property in the form in which he finds it

to have existed at the time of the death. It would tend to uncertainty in the administration of the law if the taxpayer should be permitted to trace the history of the property indefinitely into the past, and especially is this so where the relationship of the joint owners is that of husband and wife.

 But the plaintiff contends that even if the date of acquisition is to be so limited, nevertheless this item of property is not taxable because it was acquired prior to the Revenue Act of 1921, the previous estate tax statute having been repealed without saving clause as to the particular tax. But as against this view the recent decisions of the Supreme Court in Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809, and Phillips v. Dime Trust & S. D. Co., 284 U. S. 160, 52 S. Ct. 46, 76 L. Ed. 220, seem conclusive. In the latter case, page 166 of 284 U. S., 52 S. Ct. 46, 47, it was said: "The considerations which led us, in Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809, to uphold taxation of gifts in contemplation of death, made after the 1916 Act and before that of 1918, at the higher rate of the latter act, are equally applicable here. The knowledge available before the creation of the estate that it was embraced within an established taxing system and that its taxation, on the same basis and in the same manner as decedents' estates, was an essential part of the system to prevent evasions, relieves the present tax of the objection that it is arbitrarily retroactive." See, also, Schoenheit v. Lucas, 44 F.(2d) 476, 489 (C. C. A. 4).

In United States v. Provident Trust Company (decided with Tyler v. United States), 281 U. S. 497, 499, 500, 50 S. Ct. 356, 358, 74 L. Ed. 991, 69 A. L. R. 758, a part of the property held taxable under the 1921 act consisted of ground rents (title to which was held by husband and wife as tenants by the entireties) created on June 19, 1923, by conveyance from husband and wife to one Eyre, but the rents were reserved out of lands held by the husband and wife as tenants by the entireties and which had been originally acquired by them prior to the effective date of the act of 1916. This appears from the opinion of the Board of Tax Appeals in the case (5 B. T. A. 1004). Nevertheless the Supreme Court dealt with the property as an estate by the entireties, "created after the passage of the applicable act" of 1921. This is perhaps at least an indication that the history of property in such a case is not to be looked to prior to the creation of the last title.

The third possible view, and the one which I have decided to adopt (after the best consideration I could give to the subject) as open to the least objection, is that one-half of the value of this jointly held property should be included in the gross estate. When the title to the property was changed from tenancy by the entireties to joint tenancy in 1921, a new estate was created, and I think it reasonable to assume that Mrs. Bowles contributed a fair consideration in money or money's worth in the acquisition of this estate. In the proceeds of sale of the Victory notes she was entitled as a tenant by the entirety, and as a practical matter, as indicated in Brell v. Brell, 143 Md. 443, 122 A. 635, and Whitelock v. Whitelock, 156 Md. 115, 143 A. 712, she had a one-half interest therein and was entitled to one-half of the net income during the joint lives of herself and her husband. And this result is, I think, consistent with the actual holding in Commissioner of Internal Revenue v. Emery (Griswold v. Commissioner) (C. C. A. 7) 62 F.(2d) 591, 593, 594.

 The final result is that the commissioner has overvalued the gross estate by (1) the whole value of item 1, to wit, $193,004; and (2) item 2 by the amount of $88,292.64, or an aggregate overvaluation of $281,296.64, as against which he is entitled to deduct an undervaluation in item 3 of $51,729.41, making a net overvaluation of $229,567.23. It is agreed that the rate of the tax applicable to this overvaluation in this case is 10 per cent. and, therefore, the excess tax payment which the plaintiff is entitled to recover is $22,956.-72. Of this amount $14,598.96 was paid by the plaintiff to the collector on April 25, 1927, and the balance of $8,357.76 was paid on July 24, 1924. The plaintiff is entitled to interest at 6 per cent. on these two items from the dates of their respective payments, to wit $5,187.50 and $4,350.21. I, therefore, find a verdict for the plaintiff in the amount of $32,494.43.

Exceptions are noted for both parties on all adverse rulings to them respectively in the determination of the questions of law with regard to items 2 and 3, above discussed, and also on the rulings on the specific instructions requested, although they are also covered herein.