TYLER ET AL., ADMINISTRATORS, *v.* UNITED STATES.

UNITED STATES *v.* PROVIDENT TRUST COM-PANY ET AL., ADMINISTRATORS.

LUCAS, COMMISSIONER OF INTERNAL REVE-NUE, *v.* GIRARD TRUST COMPANY ET AL., EXECUTORS.

Nos. 428, 546 and 547. Argued April 24, 1930.—Decided May 19, 1930.

Mr. *Frank S. Bright,* with whom Mr. *H. Stanley Hinrichs* was on the brief, for Tyler et al.

Mr. *John S. Sinclair,* with whom Messrs. *Cuthbert H. Latta, Jr., J. Snowdon Rhoads, Charles Sinkler, John R: Yates,* and *Paul F. Myers* were on the brief, for Provident Trust Company and Girard Trust Company et al.

Mr. *Claude R. Branch,* Special Assistant to the Attorney General, with whom *Attorney General Mitchell, Assistant Attorney General Youngquist, Messrs. Sewall Key, J. Louis Monarch, Randolph C. Shaw,* Special Assistants to the Attorney General, and *Erwin N. Griswold* were on the brief, for the United States and Commissioner of Internal Revenue.

Messrs. *Edward H. Blanc* and *Russell L. Bradford,* by special leave of Court, filed a brief as *amici curiæ,* on behalf of the City Bank Farmers Trust Company.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

These cases present the question whether property owned by husband and wife as tenants by the entirety may be included, without contravening the Constitution,

in the gross estate of the decedent spouse for the purpose of computing the tax "upon the transfer of the net estate" imposed by the revenue acts of 1916, c. 463, 39 Stat. 756, 777–778, and of 1921, c. 136, 42 Stat. 227, 277–278.

In No. 428, which arose under the act of 1916, the decedent had been a resident of Maryland. At the time of his death, he and his wife owned as tenants by the entirety shares of stock in a West Virginia corporation doing business in Maryland. The decedent had been the sole owner of the stock and created the tenancy by a conveyance executed in 1917. The stock was included in the gross estate of the decedent at its value at the time of his death. The total tax assessed was paid, and the administrators brought suit to recover the portion of the amount so paid attributable to the stock, together with interest. The trial court gave judgment against the government, 28 F. (2d) 887, which was reversed by the court of appeals. 33 F. (2d) 724.

In No. 546, which arose under the act of 1921, the decedent and his wife, residents of Pennsylvania, held title to certain ground rent and to certain real estate in that state which had been conveyed to them as tenants by the entirety. The property had been acquired with the husband's separate funds and no part of the purchase price was furnished by the wife. The decedent died in 1923 leaving his wife as sole beneficiary under his will. The administrators filed an estate tax return which did not include the property interests above described. The Commissioner of Internal Revenue added this property to the gross estate and assessed a deficiency of taxes on that account. The Board of Tax Appeals held there was no deficiency. 5 B. T. A. 1004. Suit thereupon was instituted by the Commissioner in a federal district court. That court held that the section of the act which author-

ized the inclusion of the property was unconstitutional, and gave judgment against the government. This judgment the court of appeals affirmed. 35 F. (2d) 339.

In No. 547, which also arose under the act of 1921, the decedent owned real estate in Pennsylvania, of which state she was a resident. In 1923 the property was conveyed to a third person, who, in turn, reconveyed it to the decedent and her husband as "tenants by the entireties." After the death of the decedent, the Commissioner, for the purpose of computing the estate tax, included in her gross estate the value of the real estate so held. On appeal the Board of Tax Appeals held this inclusion to be erroneous. 10 B. T. A. 1100. The Commissioner filed a petition for review with the court of appeals, and that court affirmed the action of the board upon the authority of No. 546, which had just been decided. 35 F. (2d) 343.

In each case the estate was created after the passage of the applicable act; and none of the property constituting it had, prior to its creation, ever belonged to the surviving spouse.

The relevant provisions of the two acts are the same, and it will be sufficient to quote from the act of 1916.

" Sec. 201. That a tax (hereinafter in this title referred to as the tax), equal to the following percentages of the value of the net estate, to be determined as provided in section two hundred and three, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or nonresident of the United States:

*  *  *  *  *

" Sec. 202. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated:

*  *  *  *  *

"(c) To the extent of the interest therein held jointly or as tenants in [by] the entirety by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have belonged to the decedent."

The applicable provision of § 202(c) is explicit, and the intent of Congress thereby to impose the challenged tax is not open to doubt. The sole question is in respect of its constitutional validity. The attack is upon two grounds: (1) that so far as the tax is based upon the inclusion of the value of the interest in the estate held by the decedent and spouse as tenants by the entirety, it is an unapportioned direct tax and violates Art. 1, § 2, cl. 3 and § 9, cl. 4 of the Constitution; (2) that such a tax amounts to a deprivation of property without due process of law in violation of the Fifth Amendment.

The decisions of the courts of Maryland and Pennsylvania follow the common law and are in accord in respect of the character and incidents of tenancy by the entirety. In legal contemplation the tenants constitute a unit; neither can dispose of any part of the estate without the consent of the other; and the whole continues in the survivor. In Maryland, such a tenancy may exist in personal property as well as in real estate. These decisions establish a state rule of property, by which, of course, this court is bound. *Warburton* v. *White,* 176 U. S. 484, 496.

1. The contention that, by including in the gross estate the value of property held by husband and wife as tenants by the entirety, the tax *pro tanto* becomes a direct tax—that is a tax on property—and therefore invalid without apportionment, proceeds upon the ground

that no right in such property is transferred by death, but the survivor retains only what he already had. Section 201 imposes the tax "upon the transfer of the net estate"; and if that section stood alone, the inclusion of such property in the gross estate of the decedent probably could not be justified by the terms of the statute. But § 202 definitely includes the property and brings it within the reach of the words imposing the tax; so that a basis for the constitutional challenge is present. Prior decisions of this court do not solve the problem thus presented, though what was said in *Chase National Bank* v. *United States,* 278 U. S. 327, 337-339; *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339, 348; and *Saltonstall* v. *Saltonstall,* 276 U. S. 260, 271, constitutes helpful aid in that direction.

Death duties rest upon the principle that death is the "generating source" from which the authority to impose such taxes takes its being, and "it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties." *Knowlton* v. *Moore,* 178 U. S. 41, 56, 57. But mere names and definitions, however important as aids to understanding, do not conclude the lawmaker, who is free to ignore them and adopt his own. *Karnuth* v. *United States,* 279 U. S. 231, 242. A tax laid upon the happening of an event, as distinguished from its tangible fruits, is an indirect tax which Congress, in respect of some events not necessary now to be described more definitely, undoubtedly may impose. If the event is death and the result which is made the occasion of the tax is the bringing into being or the enlargement of property rights, and Congress chooses to treat the tax imposed upon that result as a death duty, even though, strictly, in the absence of an expression of the legislative will, it might not thus be denominated, there is nothing in the Constitution which stands in the way.

The question here, then, is, not whether there has been, in the strict sense of that word, a "transfer" of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights.

According to the amiable fiction of the common law, adhered to in Pennsylvania and Maryland, husband and wife are but one person, and the point made is, that by the death of one party to this unit no interest in property held by them as tenants by the entirety passes to the other. This view, when applied to a taxing act, seems quite unsubstantial. The power of taxation is a fundamental and imperious necessity of all government, not to be restricted by mere legal fictions. Whether that power has been properly exercised in the present instance must be determined by the actual results brought about by the death, rather than by a consideration of the artificial rules which delimit the title, rights and powers of tenants by the entirety at common law. See *Nicol* v. *Ames,* 173 U. S. 509, 516; *Saltonstall* v. *Saltonstall, supra,* p. 271.

Taxation, as it many times has been said, is eminently practical, and a practical mind, considering results, would have some difficulty in accepting the conclusion that the death of one of the tenants in each of these cases did not have the effect of passing to the survivor substantial rights, in respect of the property, theretofore never enjoyed by such survivor. Before the death of the husband (to take the *Tyler* case, No. 428,) the wife had the right to possess and use the whole property, but so, also, had her husband; she could not dispose of the property

except with her husband's concurrence; her rights were hedged about at all points by the equal rights of her husband. At his death, however, and because of it, she, for the first time, became entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law relating to tenancy by the entirety, and became entitled to hold and enjoy it absolutely as her own; and then, and then only, she acquired the power, not theretofore possessed, of disposing of the property by an exercise of her sole will. Thus the death of one of the parties to the tenancy became the " generating source " of important and definite accessions to the property rights of the other. These circumstances, together with the fact, the existence of which the statute requires, that no part of the property originally had belonged to the wife, are sufficient, in our opinion, to make valid the inclusion of the property in the gross estate which forms the primary base for the measurement of the tax. And in that view the resulting tax attributable to such property is plainly indirect.

2. The attack upon the taxing act as constituting a violation of the Fifth Amendment is wholly without merit. The point made is that the tax is so arbitrary and capricious as to amount to confiscation, and, therefore, to result in a deprivation of property without due process of law. The tax, as we have just held, falls within the power of taxation granted to Congress, and the challenge becomes one not to the power, but to an abuse of it. The possibility that a federal statute passed under the taxing power may be so arbitrary and capricious as to cause it to fall before the due process of law clause of the Fifth Amendment must be conceded—*Brushaber* v. *Union Pac. R. R.*, 240 U. S. 1, 24, and cases cited; *Nichols* v. *Coolidge*, 274 U. S. 531, 542—but the present statute is not of that character. To include in the gross estate, for

the purpose of measuring the tax, the value of property, no part of which originally belonged to one spouse, but which came to the tenancy, mediately or immediately, as a pure gift from the other, and which, as a consequence of the latter's death, was relieved from restrictions imposed by the law in respect of tenancy by the entirety so as to produce in the survivor the right of sole proprietorship, is obviously neither arbitrary nor capricious. The evident and legitimate aim of Congress was to prevent an avoidance, in whole or in part, of the estate tax by this method of disposition during the lifetime of the spouse who owned the property, or whose separate funds had been used to procure it; and the provision under review is an adjunct of the general scheme of taxation of which it is a part, entirely appropriate as a means to that end. *Taft* v. *Bowers,* 278 U. S. 470, 482.

*No. 428, judgment affirmed.*
*No. 546, judgment reversed.*
*No. 547, judgment reversed.*