ROBERT B. BOWLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53242, 64125. Promulgated November 14, 1934.

*Spotswood D. Bowers, Esq.*, for the petitioner.
*Frank M. Thompson, Esq.*, for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, involve deficiencies in income tax for the years 1926 to 1929, inclusive, as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 53242 | 1926 | $9,672.80 |
| Do | 1927 | 10,052.53 |
| Do | 1928 | 9,064.16 |
| 64125 | 1929 | 9,748.12 |

In his determination of the deficiencies the respondent has held that the income from four certain trusts created by the petitioner for the benefit of his wife and three minor children is taxable to the petitioner because of the revocability of the trusts under the provisions of each of the trust instruments. The sole issue for our present determination is whether during the taxable years under consideration the income of the several trusts is taxable to the petitioner under section 219 (g) and (h) of the Revenue Act of 1926 and sections 166 and 167 of the Revenue Act of 1928.

Section 219 of the Revenue Act of 1926 provides, so far as material, as follows:

(g) Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

(h) Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, * * * such part of the income of the trust shall be included in computing the net income of the grantor.

Sections 166 and 167 of the Revenue Act of 1928 are substantially the same as the above quoted provisions of the 1926 Act.

The petitioner created four trusts by separate similar trust instruments, all under date of December 25, 1925, naming as the respective beneficiaries:

Trust No. 1, his wife, Gladys Stout Bowler;
Trust No. 2, his son, Robert Bonner Bowler, Jr., age 19;
Trust No. 3, his daughter, Katherine Wise Bowler, age 17;
Trust No. 4, his daughter, Anne Fairchild Pendleton Bowler, age 7.

The beneficiaries named were to receive all of the income of their respective trusts. In each of the first three of the above trusts the trustor, the petitioner herein, and the respective beneficiaries were named trustees and in the fourth the trustor and his wife, Gladys

Stout Bowler, were named trustees. There is no question raised with respect to the duties and powers of the trustees of any of the trusts. However, in addition to the above mentioned provisions, each of the trust instruments contains a further provision designated "Clause Eighth", naming a "committee" of three persons who are given the power to alter or amend the respective trusts in certain respects as specifically set forth. This provision, as contained in the Gladys Stout Bowler Trust—and except for the persons therein named it is practically the same in each trust instrument—is as follows:

CLAUSE EIGHTH: I hereby create in JAMES N. STOUT of said New York, said RICHARD W. HALE, and STANLEY CLARKE of said New York, herein referred to as the Committee, a joint power exercisable at any time or from time to time by any two of said persons by instrument or instruments in writing signed by said two and delivered to any trustee hereunder who may be one of themselves, or in case there be no trustee then in office to a person designated by them to accept such delivery.

A. To remove any trustee hereunder.

B. To appoint a successor to any trustee who dies, resigns, or is removed except in the cases provided for by Clause Seventh paragraph O hereof.

C. To change and alter any of or all the trusts herein set forth and declare new trusts of the property in any way or manner whatsoever; also to terminate or modify the beneficial interest of any person or class of persons and to name or appoint any other persons or classes of persons as beneficiaries whether by way of addition or substitution; also to determine and alter the number of, the power of and the succession among the committee.

D. No exercise of this power shall exhaust it. It may, however, be released, extinguished or restricted by a like instrument so signed by any two of the committee and delivered to the trustees as aforesaid.

E. Any of the persons in whom this joint power is vested may resign at any time by a signed instrument in writing. In case the number of the foregoing committee in whom this joint power is vested should at any time be less than three then a new person or persons shall be appointed a member or members of this committee by a writing signed by the remaining member or members of the committee and with the same effect as if he or they had been originally named. A majority of the committee may also increase the committee to five and name the additional members, in which case the same provisions for the appointment of successors shall govern and the power shall be executed by three or more of the committee. No personal liability shall attach to any member of the committee for any act or omission to act whatsoever.

F. A certificate signed by a majority of the committee certifying to a change in the trustees or committee or any other fact affecting either the trust fund or the duties of the trustees shall be conclusive evidence in favor of any person or corporation which acts relying upon such certificate.

G. The power given to the committee has priority over the powers herein given to the trustees but shall not in any case take effect so as to prejudice third parties who take property or otherwise change position in good faith relying upon the exercise or purported exercise of any power by the trustees.

H. No exercise of said power shall be valid while I am alive and competent to act until and unless I shall have in writing signified that I have no objection thereto. No exercise shall be valid if such instrument exercising said

power has been delivered less than five days before the death of any member of the committee. No exercise affecting the first of said equal shares for my said wife and then for my daughter KATHERINE WISE BOWLER after both are dead; no exercise affecting the second of said equal shares held for my said wife and then for my daughter ANNE FAIRCHILD PENDLETON BOWLER after both are dead, and no exercise affecting the third of said equal shares held for my said wife and then for my said son shall be valid after both are dead.

The beneficiaries, the trustees, and the " committees " of the four trusts were as follows:

|  | Beneficiaries | Trustees | Committees |
|---|---|---|---|
| Trust No. 1____ | Gladys Stout Bowler_____ | Gladys Stout Bowler_____ Robert Bonner Bowler____ | James N. Stout. Richard W. Hale. Stanley Clarke. |
| Trust No. 2____ | Robert Bonner Bowler, Jr_____ | Robert Bonner Bowler, Jr_ Robert Bonner Bowler____ | Richard W. Hale. Katherine Wise Bowler. Stanley Clarke. |
| Trust No. 3____ | Katherine Wise Bowler_____ | Katherine Wise Bowler___ Robert Bonner Bowler____ | Richard W. Hale. Robert Bonner Bowler. Stanley Clarke. |
| Trust No. 4____ | Anne Fairchild Pendleton Bowler_ | Robert Bonner Bowler____ Gladys Stout Bowler_____ | James N. Stout. Richard W. Hale. Stanley Clarke. |

By reason of clause eighth of the trust instruments, did the grantor of the trusts, acting alone or in conjunction with any other person not a beneficiary of the trusts, have the power to revest in himself any of the corpus of the trusts or have distributed to himself any of the income of the trusts? In *Reinecke* v. *Smith*, 289 U.S. 172, the Supreme Court had under consideration a somewhat similar question arising under section 219 (g) of the Revenue Act of 1924, which corresponds to the above quoted provisions of the 1926 Act. The Court held that the statute was not unconstitutional as applied to trusts created prior to its enactment and that a trust was revocable within the meaning of the statute when it could be revoked by the settlor acting in conjunction with a corporate trustee. In its opinion the Court said:

In approaching the decision of the question before us, it is to be borne in mind that the trustee is not a trustee of the power of revocation and owes no duty to the beneficiary to resist alteration or revocation of the trust. Of course he owes a duty to the beneficiary to protect the trust res, faithfully to administer it, and to distribute the income; but the very fact that he participates in the right of alteration or revocation negatives any fiduciary duty to the beneficiary to refrain from exercising the power. The facts of this case illustrate the point; for it appears the trust in favor of the grantor's wife was substantially modified, to her financial detriment, by the concurrent action of the grantor and the trustees. This case must be viewed, therefore, as if the reserved right of revocation had been vested jointly in the grantor and a stranger to the trust.

.Decisions of this court declare that, where taxing acts are challenged, we look not to the refinements of title but to the actual command over the property taxed—the actual benefit for which the tax is paid. *Corliss* v. *Bowers, supra*, 281 U. S. at page 378, 50 S. Ct. 336, 74 L. Ed. 916; *Tyler* v. *United States*, 281 U. S. 497, 503, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758; *Burnet* v. *Guggenheim, supra*. A settlor who at every moment retains the power to repossess the corpus and enjoy the income has such a measure of control as justifies the imposition of the tax upon him. *Corliss* v. *Bowers, supra*. We think Congress may with reason declare that, where one has placed his property in trust subject to a right of revocation in himself and another, not a beneficiary, he shall be deemed to be in control of the property. We cannot say that this enactment is so arbitrary and capricious as to amount to a deprivation of property without due process of law. As declared by the committee reporting the section in question, a revocable trust amounts, in its practical aspects, to no more than an assignment of income. This court has repeatedly said that such an assignment, where the assignor continued to own the corpus, does not immunize him from taxation upon the income. *Burnet* v. *Leininger*, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665; *Lucas* v. *Earl*, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731. It cannot therefore be successfully urged that, as the legal title was held by the trustees, the income necessarily must for income taxation be deemed to accrue from property of some one other than Douglas Smith. The case is plainly distinguishable from *Hoeper* v. *Tax Commission*, 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248, on which respondents rely, for there the attempt was to tax income arising from property always owned by one other than the taxpayer, who had never had title to or control over either the property or the income from it. The measure of control of corpus and income retained by the grantor was sufficient to justify the attribution of the income of the trust to him. The enactment does not violate the Fifth Amendment.

A contrary decision would make evasion of the tax a simple matter. There being no legally significant distinction between the trustee and a stranger to the trust as joint holder with the grantor of a power to revoke, if the contention of the respondents were accepted it would be easy to select a friend or relative as coholder of such a power and so place large amounts of principal and income accruing therefrom beyond the reach of taxation upon the grantor while he retained to all intents and purposes control of both. Congress had power, in order to make the system of income taxation complete and consistent and to prevent facile evasion of the law, to make provision by section 219 (g) for taxation of trust income to the grantor in the circumstances here disclosed. * * *

The power to revoke here rested in a committee, subject to the approval of the grantor, instead of in the regularly designated trustees and the grantor acting together as in *Reinecke* v. *Smith, supra*. We think, however, that the facts in this respect are not materially different and that the reasoning of the Court in that case applies with equal force to the situation presented in the instant proceedings. The committees in whom the power to revoke was nominally lodged stood in no different relation to the settlor or to the beneficiaries of the trust than did the trustees who had the power in *Reinecke* v. *Smith, supra*. If the trustees there were under no duty to the beneficiaries to perpetuate the trusts, neither were the committees

here. The committee members had no duties or powers in respect of the trusts except to alter or revoke them, and it is reasonable to suppose that in these matters they would have carried out the wishes of the grantor of the trusts by whom they were selected. The situation here appears to be almost identically that pointed out by the Court in *Reinecke* v. *Smith*, *supra*, as giving rise to an unlawful evasion of the tax. While in the instant case the grantor did not have the affirmative power to alter or revoke the trusts in conjunction with the members of the committees, he did have a veto power over their acts and they could do nothing without his written approval. The statute does not require that the grantor's power to revest title in himself shall be a direct and independent power. On the other hand, it recognizes that the power may rest jointly in the grantor and another or others. See *Bromley* v. *Commissioner*, 66 Fed. (2d) 552; affirming 26 B.T.A. 878. Whether there is actually such a power reposing in the grantor is a matter to be determined from all of the circumstances surrounding the creation and operation of the trusts.

We believe that it would require too limited a construction of the statute and one inconsistent with its manifest purpose to say that the grantor must be at liberty to exercise the power by his own affirmative act rather than through the medium of other persons of his own choosing who may have no interest whatever in the trust other than to carry out his wishes. For all that the evidence shows this was the situation here. We know nothing of Robert W. Hale and Stanley Clarke, who were the majority of each of the committees and who had the power to alter or revoke the trusts with the approval of the grantor.

It seems to us, too, that, since the committees could change the form of the trusts only with the consent of the grantor, the power might be said to have rested jointly in the committees and the grantor or that, in the language of the statute, the grantor had the power " in conjunction with " the committees.

It is the plain inference to be gained from the above quoted language in the *Reinecke* v. *Smith* case that, since it was the intention of Congress in enacting section 219 (g) " to make the system of income taxation complete and consistent and to prevent facile evasion of the law ", the court will look with disfavor upon a construction of the statute that " would make evasion of the tax a simple matter." Obviously, the instant case offers an example of just such an attempt at evasion.

Because of the peculiar facts presented in these proceedings we do not believe that anything would be gained by a discussion of the many prior cases involving the same sections of the statutes but

materially dissimilar facts. Indeed, no case that we have been able to find bears a closer resemblance to the instant case, either in point of facts or principle involved, than *Reinecke* v. *Smith, supra,* and we think that the question here presented is controlled by the decision of the Court in that case. We therefore hold that the trusts were revocable by the grantor and that the income of all of the trusts is taxable to the grantor, the petitioner herein.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*