### CAHN v. UNITED STATES.
### No. 41955.

Court of Claims.
April 8, 1935.

John W. Townsend, of Washington, D. C. (Claude E. Koss and Proskauer, Rose & Paskus, all of New York City, on the briefs), for plaintiff.

Mrs. Elizabeth B. Davis, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The plaintiff brings this suit to recover $3,672.86 with interest alleged to have been overpaid on taxes assessed against the estate of Jonas Kuppenheimer. Kuppenheimer was a resident of Illinois and died testate in that state on May 4, 1921, leaving his entire residuary estate to his wife. Bertram J. Cahn was appointed executor of his estate.

On May 3, 1922, Cahn, as executor of the estate, filed a federal estate tax return disclosing a tax of $81,768.07. The tax was computed and paid pursuant to the provisions of the Revenue Act of 1918, which was in effect at the time of the decedent's death. The return so filed included as part of the taxable estate $65,000 as the full market value at the time of the death of the decedent of certain real estate situated in Lake county, Ill., which had been conveyed in 1910 to the decedent and his wife as joint tenants. Kuppenheimer paid the entire purchase price, and his wife contributed nothing thereto. On January 23, 1924, Cahn filed a claim in abatement of this additional tax, and at the same time a claim for refund of $10,000 of the tax paid on May 3, 1922, on the ground that the value of the real estate held in joint tenancy to which reference has been made above should not have been included in the return. The claim for refund was considered and reconsidered and finally rejected. Following its final rejection, this suit was brought.

The ground upon which recovery is sought is that only one-half of the value of the real estate referred to above should be included in the gross estate subject to the estate tax. On behalf of the government it is contended that the entire value of such property is subject to the estate tax. The case turns upon the construction and validity of subdivision (d) of section 402 of the Revenue Act of 1918 as determined by the rules laid down by the Supreme Court.

The decision in Griswold v. Helvering, 290 U. S. 56, 54 S. Ct. 5, 78 L. Ed. 166, has been misunderstood and misapplied. In order to determine definitely what was held in that case, it is necessary to go back to its origin.

The controversy in the case last cited arose in the following manner: The decedent died in 1923, and at the time of his death he and his wife held as joint tenants certain real estate in Illinois, the title to which was vested in them by conveyance on October 5, 1909. The Commissioner of Internal Revenue held that the value of the whole of this real estate was subject to the estate tax, and the executors of his estate appealed to the Board of Tax Appeals, which, disapproving in part the Commissioner's determination, held that the value of only the decedent's one-half of the property could be included for the purposes of the tax. Both the government and the taxpayer took an appeal from this decision; the government contending that all of the property so jointly held should be included in the gross estate of the decedent and the taxpayer contending that none of it should be taxed because the joint estate became fixed and vested in each of the joint tenants at a time when there was no federal law for death taxes upon the value of joint estates. Before the case reached the Circuit Court of Appeals (Commissioner of Internal Revenue v. Emery, 62 F.(2d) 591), however, the Commissioner abandoned the appeal on behalf of the government; consequently the Circuit Court of Appeals had nothing left to pass upon except the question of whether the decedent's one-half interest in the property could be taxed, and on this point it affirmed the decision of the Board of Tax Appeals which the taxpayer claimed made the statute retroactive. The taxpayer again applied for a review of this decision and obtained it upon certiorari. The Supreme Court said that the sole question in the case was "whether this application of the statute gives it a retroactive effect," and held that it did not, although the joint estate was created prior to the time when the estate tax came into existence. We shall refer to this decision further on when considering more particularly the contention of plaintiff that, if the whole of the joint estate is included in the gross estate of the decedent, as required by the statute in the case now before the court, the statute would be applied retroactively.

It will be seen that the question of whether the whole of the joint estate could be taxed was not involved in this decision. It is true that the court's decision included a comment on the case of Knox v. McElligott, 258 U. S. 546, 42 S. Ct. 396, 397, 66 L. Ed. 760, but it said that it was not to the contrary of its decision in the case then under consideration. As plaintiff relies particularly upon the last-named case, it becomes necessary to analyze that opinion also.

In the Knox Case, supra, it appears that the joint tenancy involved was created in 1912 and that in 1917 one of the joint tenants died. The Commissioner of Internal Revenue included the value of all of the joint estate in the gross value of the estate

of the decedent and assessed the tax accordingly. The District Court held that the provisions of the act of 1916 with reference to joint estates (section 202 (c), which is the same as section 402 (d) of the 1918 act) applied only to estates thereafter created and not to existing vested property. The Circuit Court of Appeals (McElligott v. Kissam, 275 F. 545) reversed this decision, and the Supreme Court said: "It will be observed, therefore, that this case involves the same question as that decided in Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747 [26 A. L. R. 1454], and on the authority of that case the judgment of the Circuit Court of Appeals [269 F. 321] is reversed."

The decision in the Shwab Case, supra, held that the 1916 act could not be applied retroactively to a transfer made prior to its enactment, and the question of whether the statute was retroactive in its effect seems to have been all that was presented to the court or considered in the Knox Case. Since its decision, however, a new point has been raised and a new principle applied which we think, had it been considered in the Knox Case, would have resulted in a different judgment. We think the decision in the Knox Case, if it be given the meaning ascribed to it by counsel for plaintiff, has been practically overruled by the case of Tyler v. United States, 281 U. S. 497, 502–504, 50 S. Ct. 356, 359, 74 L. Ed. 991, 69 A. L. R. 758.

█ Before discussing the Tyler Case, it will be well to observe a distinction which has often been overlooked when considering whether or not an estate tax is retroactive. It is this: If the tax is imposed upon a transfer of property which was made at the time when no such tax existed and nothing passes by reason of death, the imposition of the tax clearly gives it a retroactive effect. Where the tax is not imposed upon a prior transfer, but upon the happening of another event, the result of which is made the occasion of the tax, and that event is death occurring after the statute has been enacted, then the statute is not retroactively applied. This, we think, is made clear by the opinion of Mr. Justice Sutherland in the Tyler Case, supra, in which he said: "The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the

imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights."

In the same learned opinion it is said that "death duties rest upon the principle that death is the 'generating source' from which the authority to impose such taxes takes its being," that "a tax laid upon the happening of an event, as distinguished from its tangible fruits, is an indirect tax," and that, "if the event is death and the result which is made the occasion of the tax is the bringing into being or the enlargement of property rights," Congress may "treat the tax imposed upon that result as a death duty."

The question of whether the act was retroactive was not considered in the Tyler Case, and it is urged that the reason is that the estate in question was not created until after the passage of the taxing act. We think the true reason is that, regardless of whether the joint estate was created before or after the passage of the taxing act, no question of retroactivity could arise for two reasons: First. Because it is definitely laid down in the opinion that the matters which occasion the tax do not come into existence until death occurs. If the death occurs after the enactment of the statute imposing the tax, the only question is whether it results in definite accessions to the property rights of the surviving tenant. As the facts necessary to make this principle applicable were found in the Tyler Case, the whole of the estate was held subject to the tax. Second. Because the enlargement of the estate which occasioned the tax and which occurred at death would be the same whether the estate was created before or after the passage of the taxing act. Consequently this matter was entirely immaterial, and this was the reason why it was not considered. We shall hereinafter call attention to this fact in considering another feature of the case.

█ In plaintiff's reply brief it is contended there was no enlargement of the property rights of the surviving joint tenant in her particular interest in the joint estate by reason of the death of the other cotenant; that before his death she could sell or dispose of her undivided half and as to it she could do no more after his death; and that therefore, while the death of Jonas Kuppenheimer would present a "proper occasion for the imposition of the tax" upon his interest in the property jointly owned, there was no basis for any tax in relation to her interest therein.

The argument at first glance seems plausible, but a consideration thereof will show that it is fallacious both in fact and in law: In fact, because it is not correct to say that there was no enlargement of the estate of the survivor upon the death of the other cotenant; and in law, because the tax is not imposed as a succession tax, for immediately upon the death of one cotenant the survivor becomes the owner in fee simple of the whole joint estate, and none of it passes in the ordinary manner into the hands of his administrators or executors.

Upon the first point made above it will be observed that, while both parties are living, neither has an absolute estate, neither can occupy or use any part of the premises owned jointly to the exclusion of the other, and neither one can dispose of his interest in the property by will, for immediately upon his death the title becomes vested in the survivor. As long as both tenants are alive, either is liable to lose his interest in the joint estate by reason of his death, for, as above pointed out, he has only a defeasible estate as long as the joint tenancy exists. While it is true that a joint tenant may transfer his interest prior to death and thereby convey to the transferee the interest of a tenant in common in the property, and after the death of one tenant the survivor can also convey his interest in the property, *the interest which he can then convey is very different and much greater than he could convey prior to the death of the other cotenant, as has been shown above.* As long as both tenants are living, each has an interest in the whole property, including the interest of the other, and his title thereto is just as strong and equally extensive as that of the other, but at death he loses all, and the survivor's interest becomes indefeasible. While the conveyance of the interest of a joint tenant will make his grantee a tenant in common with the other cotenant, the estate thus acquired does not differ substantially from that of a joint tenant, except that the right of survivorship no longer exists. The rights of a tenant in common are hedged about by numerous restrictions—so many, in fact, that a good-sized text-book is required to detail the effect of them. One of the most important of these restrictions is that the tenant in common cannot possess, use, or convey any part of the estate held in cotenancy to the exclusion of the other cotenant. The situation is very different upon the death of a joint tenant, for the survivor immediately acquires title to the whole of the joint estate in fee simple, and can con-

vey the same kind of a title to the whole or any part thereof. In short, the survivor may then make any disposition of the former joint estate which he may see fit, for his title is absolute.

On the second point it should be noted that the Commissioner was not acting under or undertaking to apply the general provisions of the law which impose a tax measured by the amount of decedent's estate which has passed to others by reason of the death of the owner. The case of Lang v. Commissioner, 289 U. S. 109, 53 S. Ct. 534, 535, 77 L. Ed. 1066, although it involved a tenancy in the entirety, shows that the principle upon which this tax is laid does not depend upon the amount of property which "is inherited by the survivor or passes from the dead to the living by right of succession." It rests upon the provisions of the statute as to what "should be included for the purpose of determining the value of the gross estate." The Commissioner was acting under a special and definite provision of the law which on the death of one joint tenant expressly imposed a tax measured by the value of the property held by both. The law required that there should be included in the gross estate all property "to the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person." In other words, where a person who was a joint tenant or a tenant in the entirety dies, a tax was imposed measured by the whole of the property held by both of the cotenants and, as we have shown above, if this were not so, a tax would not be imposed even upon one-half, for it would pass instead to the survivor without becoming a part of his gross estate. In many of the cases cited, the government had abandoned all claim that the interest of the survivor in the joint estate was subject to the tax because it had originally belonged to or had been acquired by the survivor and was exempted under the terms of the statute. Nevertheless, it was still necessary to determine whether the statute was valid as to decedent's half of the joint estate; the argument being in cases where the joint estate had been created prior to the passage of the taxing statute that its application was retroactive and therefore unconstitutional. In the Griswold Case, supra, where the joint estate had been created prior to the taxing act, the Supreme Court said that the sole question was whether the application of the statute to the joint estate "gives it a retroactive effect," and also "with that we find no difficulty. Under the statute, the death of

decedent is the event in respect of which the tax is laid. *It is the existence of the joint tenancy at that time, and not its creation at the earlier date, which furnishes the basis for the tax.*" (Italics ours.)

The court had before it a case in which only the share of the decedent was involved, presumably because the share of the other cotenant came within the exception made in the statute. The estate, as said above, was created prior to the time when the taxing act went into effect. As the court does not mention as a reason for its decision the fact that only the interest of the decedent was involved, we think the holding of the court is in effect that neither the creation of the estate at a date prior to the taxing act, nor the fact that only the decedent's portion of the joint estate was involved, is material in determining whether the tax is retroactive. If the joint tenancy existed at the time of the death of the decedent, and that was after the passage of the act, then the basis of the tax is fixed and there is no retroactivity in its application. Later on we shall see that it was again so held in effect by the Supreme Court in affirming the case of Third Nat. Bank & Trust Co. of Springfield v. White (D. C.) 45 F.(2d) 911.

It is said, however, that the Tyler Case has no application because the estate involved therein was one of entirety, and that, where there is a joint tenancy, one of the joint owners can transfer his interest to another and thereby terminate the tenancy and prevent a survivor from obtaining any interest therein. This is true, but the difference pertains to conditions before death and not to changes caused by death. Following the particulars given in the Tyler Case as the basis of the tax, we note that before the death of one of the joint tenants each party had an equal right to possess and use the whole property. In other words, neither tenant in the absence of an agreement could claim the exclusive right to possess any part of it. In both cases at the death of one of the joint tenants the survivor became "entitled to exclusive possession, use, and enjoyment" and "ceased to hold the property subject to qualifications imposed by the law * * * and then, and then only, acquired the power, not theretofore possessed, of disposing of [all] the property." Indeed, it would seem that, so far as the survivor is concerned, the accretion to his rights is greater under a joint tenancy than under one of entirety. As long as both of the joint tenants lived, either could divest the other of any interest in an undivided one-half of

the estate by transfer or conveyance, and, as said before, thus defeat the right of survivorship which could not be defeated in the case of a tenancy in the entirety. In other words, under the joint estate the right of survivorship was uncertain, while under one of entirety it could not be taken away by the act of the other party. For these reasons, it seems to us a joint tenant gains more by the death of the other than does a tenant in entirety.

A feature of the case at bar that makes it very important is that, if it be held that the interest of the survivor cannot be included in measuring the tax because it is not enlarged by death, logically it must also be held that this rule would apply to *all* joint estates whether created before or after the enactment of the statute, for this would make no difference with the amount of the enlargement. If the statute is unconstitutional as applied to estates created before the passage of the taxing act because there was no enlargement of the estate of the survivor by death, the same conditions would make it equally unconstitutional when the estate was created after the enactment of the taxing act. But, as we have seen, the Supreme Court has found no difficulty as to the constitutionality of the act.

We think that the argument made in the Supreme Court opinion on the Tyler Case, supra, fully disposes of the contention that the statute under consideration is either unconstitutional or invalid because it requires, not only the interest of the decedent in the property held in cotenancy to be included in the gross estate of the decedent, but also the interest of the survivor, and we agree with the Circuit Court of Appeals in O'Shaughnessy v. Commissioner, 60 F.(2d) 235, that the argument in the Tyler Case is equally applicable to cases of joint tenancy and cases of tenancy in the entirety.

We have already indicated that we think the Griswold Case, supra, in effect determines that the act applies to the interest of the survivor, notwithstanding the joint estate may have been created prior to its passage. The question of whether the act applies under such conditions was raised in Phillips v. Dime Trust & Safe Deposit Co., 284 U. S. 160, 166, 52 S. Ct. 46, 47, 76 L. Ed. 220, but the court said that, "without foreclosing consideration of this contention at another time," it was unnecessary to pass upon it in "the present case." This point, however, was raised again in the case of Third Nat. Bank & Trust Co. of Springfield v. White, supra, before the federal

District Court with reference to an estate in entirety which had been created prior to the time when any estate tax whatever had been imposed. The District Court held that the opinion in the Tyler Case did not in the least depend upon the fact that tenancies were established subsequent to the statute imposing the tax and that the statute applied regardless of the date when the tenancies were created. This decision was affirmed by the Circuit Court of Appeals [58 F.(2d) 1085] without an opinion, and also affirmed by the Supreme Court per curiam without an opinion in 287 U. S. 577, 53 S. Ct. 290, 77 L. Ed. 505. It seems quite obvious that, so far as this question of retroactivity is concerned, there can be no difference whether the cotenancy is joint or in the entirety. These two kinds of cotenancies are specified together in the provision of the statute with which we are now concerned, and, if the tax was not retroactively imposed in cases where an estate in entirety had been created prior to the passage of the act imposing the tax, it is clear that it would not be so imposed in cases of joint tenancy. We therefore conclude that, if the case of Knox v. McElligott, supra, should be regarded as contrary, although the point now raised by the government was not considered therein, it has been in effect overruled by later cases. We consider that the cases of Kaufman v. Reinecke (C. C. A.) 68 F.(2d) 642, and Tait v. Safe Deposit & Trust Co. (C. C. A.) 70 F.(2d) 79, both of which misinterpreted the Griswold Case, supra, are not to be regarded as an authority.

For the reasons stated above, we conclude that the tax was not imposed retroactively and that the Commissioner acted properly in including all of the joint estate in the gross estate of the decedent for the purpose of determining the amount of tax to be assessed.

The case is a very important one, for, as we have shown above, the effect of a decision in plaintiff's favor would be to make the statute invalid as to the interest of the survivor in all cases, and would open a wide and easy avenue of escape from a large part of the estate tax through the creation of joint tenancies.

Another contention seems to be made indirectly, which is that the Congress could not have intended the tax to be levied on the whole of the joint estate because it would operate unfairly when so applied. But Congress made provision that, if the survivor had contributed to the acquiring of the joint estate, an exemption should be made to the extent of such contributions. The statute, as before stated, is intended to reach conveyances presumably made in contemplation of death without any consideration, and in this case the evidence shows that the wife of the decedent neither paid nor contributed anything towards the acquirement of the joint estate.

It is urged on behalf of defendant that no proper claim for refund has been filed, but what we have said above makes it unnecessary for us to consider this feature of the case. The petition of plaintiff must be dismissed, and it is so ordered.

BOOTH, Chief Justice, and WHALEY and WILLIAMS, Judges, concur.

LITTLETON, Judge (dissenting).

I do not think the interest of the surviving joint tenant was taxable under the rule announced in Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454, and Knox et al. v. McElligott, 258 U. S. 546, 42 S. Ct. 396, 66 L. Ed. 760. The joint tenancy in the case at bar was created prior to the enactment of the Revenue Act of November 8, 1916, which was not retroactive; one of the joint tenants died while the Revenue Act of 1918 was in force. This act was not retroactive. In Tyler et al. v. United States, 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758, and in each of the other two cases decided in the same opinion, the tenancy by the entirety was created after the passage of the Revenue Act of November 8, 1916, and in each case one of the tenants died before the enactment of the Revenue Act of 1924. Section 402 (d) of the Revenue Act of 1921 (42 Stat. 278) was not retroactive. The question presented in the case at bar was therefore not involved in Tyler et al. v. United States (Lucas v. Girard Trust Co. et al.), supra, and United States v. Provident Trust Co. et al., 291 U. S. 272, 54 S. Ct. 389, 78 L. Ed. 793. See Helvering v. Grinnell, 294 U. S. 153, 55 S. Ct. 354, 79 L. Ed. ——, decided February 4, 1935.

Third National Bank & Trust Co. of Springfield v. White (D. C.) 45 F.(2d) 911, Id., 287 U. S. 577, 53 S. Ct. 290, 77 L. Ed. 505, involved section 302 (e) of the Revenue Act of 1924 (26 USCA § 1094 note), and Industrial Trust Co. et al. v. United States (Ct. Cl.) 9 F. Supp. 817, decided February 4, 1935, involved section 302 (g) of the 1924 Act. Both subsections (e) and (g) were specifically made retroactive by subsection (h) of section 302.