JOHN GRAF COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91828.   Promulgated February 9, 1939.

*E. C. Pommerening, Esq.*, for the petitioner.
*John D. Kiley, Esq., Emil J. Nelson, Esq., Carrol Walker, Esq.*, and *Irene Feagin, Esq.*, for the respondent.

380

OPINION.

DISNEY: ■ The respondent contends that the petitioner in the taxable year received a $3,000 account receivable in merchandise and discounts, that all events necessary to fix the liabilities of the parties had occurred, the Starr Canning Co. being absolutely liable, and that

therefore petitioner, reporting income on the accrual basis, had $3,000 income in that year; whereas the petitioner contends that there was a contingency preventing fixation of liability and accrual of income, in that the Starr Canning Co. was liable to pay the discounts only in the event of beer being ordered by the petitioner. Although we do not think the contingency in this case is of the nature involved in *Edwards Drilling Co.*, 35 B. T. A. 341, cited by petitioner, or that a similar principle is involved in *Shafpa Realty Corporation*, 8 B. T. A. 283, or *Automobile Underwriters, Inc.*, 19 B. T. A. 1160, also cited and relied upon by petitioner, nevertheless, we believe that there is lacking in the instant situation the definiteness of liability to pay, upon which the application of the accrual system of accounting is based. The underlying thought is that pecuniary obligations payable to the taxpayer are considered discharged when incurred, *United States* v. *American Can Co.*, 280 U. S. 412. These must be unconditional obligations, *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11; and they must be definitely payable, *American National Co.* v. *United States*, 274 U. S. 99. The obligation of the Starr Canning Co. was not definitely payable, but depended upon and was proportionate to purchases made by the petitioner, at its volition.

It is plain from the contract that it was the intent that the discounts might materialize in years other than the taxable year, or might not be realized at all, depending upon the measure of fulfillment of a contract, optional in that respect with the petitioner. In general, income tax concerns itself with realized gains or losses. *Lucas* v. *American Code Co.*, 280 U. S. 445. We can not think the fact that the option was in the petitioner removes the element of uncertainty or contingency which ordinarily prohibits application of ideas of accrued income, for the contingencies of business, that is as to whether petitioner's business would, or would not, justify it in ordering additional beer from the Starr Canning Co., is a contingency as real as that of condition in liability for payment by an obligor, which is commonly held to prevent accrual of income. Taxation is practical, *Tyler* v. *United States*, 281 U. S. 497. Although the Starr Canning Co. was under liability to pay the discounts, this was subject to a condition—the requirements of the petitioner in its business of selling beer. Realistic approach to this question compels the conclusion that petitioner's income would not be accurately reflected by the inclusion therein of discounts, the receipt of which was not certain. Although the payment thereof could be compelled by the petitioner, it was conjoined with and dependent upon further business expenditures by it. We do not think such a contingent element should enter into the computation of income. In *Burnet* v. *Logan*, 283 U. S. 404, in holding that there was no realization of gain until taxpayer

recovered the capital investment, the Court said that payments were "only conditionally promised." The promise was equally conditional here. We hold that the inclusion of any amount above $727.50 in the petitioner's income for the year 1934 was error.

■ On the question of depreciation the petitioner offered two witnesses—the first, the petitioner's bookkeeper and accountant, and the second, the accountant and credit man for a company engaged in the manufacture and sale of bottling machinery. Petitioner's bookkeeper-accountant testified in general that from his experience in keeping the books based on trade-in and "things like that" the life of most of the machinery would be seven or eight years at the most. The accountant and credit man for the bottling company manufacturing bottling machinery testified as to the value of certain machines, to wit: That the life of the "Cem Filler" was five years; that of the "Dixie Filler", six years; that of the "Royal Filler", four years; and that of a bottle washing machine, eight to ten years. Evidence as to life of four certain items of machinery with a total valuation of approximately one-half of the value of the entire machinery upon which petitioner claims depreciation (about $22,500 out of machinery with a total value of $45,267.58) does not constitute sufficient showing to overcome the presumption of the correctness of respondent's determination in disallowing $1,497.22 out of depreciation claimed of $4,409.16, we having no record of the depreciation claimed upon each piece of machinery and the figures used by both respondent and petitioner being lump sums covering all the machinery. Moreover, evidence that the "Royal Filler", which cost $7,750, was traded in on new machinery at $3,000 at a time when depreciation taken left it a book value of $5,289.84, and that the "Dixie Filler", which cost $3,300, was traded in on new machinery at $1,700 at a time when depreciation taken left it a book value of $2,007.50, does not, we think, determine the question of depreciation. Such transactions reflect, if anything, the market value of machinery at the time thereof and not the amount of depreciation suffered. Figures used in trade-in or exchange of machinery are not the criterion of depreciation. There is here, moreover, no evidence that the trade-in figure was actual fair value at the time. For the same reason the testimony of petitioner's own bookkeeper-accountant shows on its face that the witness was not qualified to give an estimate of the life of the machinery, since he based his opinion upon trade-in figures.

Although the record shows that the respondent used a basis of 12½ years as against 10 years claimed by the petitioner, these percentages are composite rates, based not upon each piece of machinery, but upon the total value of all machinery, and the 12½ year basis is not

inconsistent with the length of life as to four certain items testified to by the accountant of the company manufacturing bottling machinery. Moreover, the respondent proceeded under the regulations provided in such cases, and these have not been shown to be invalid. We think the petitioner has not shown error in the respondent's treatment of depreciation and the disallowance of $1,497.22 from petitioner's claim in that regard is therefore approved.

■ In our opinion the petitioner has not shown error in the treatment accorded by the respondent to its claim of deduction for bad debts. We do not think these debts were ascertained to be worthless in 1934. It is true that in that year they were in a sense written off, following a report by a collecting agency to whom the accounts were, as a last effort, turned over in December 1933. But long prior to that time credit had, to a large extent, been cut off from the debtors represented in these accounts, the accounts had become slow, various salesmen had tried to collect, the manager and bookkeeper had determined that petitioner could not collect the accounts, and they had been placed upon a suspense ledger in the year 1933. The respondent disallowed $2,494.82 out of $5,618.71. More than $2,494.82 was represented by accounts the last purchases in which were made in 1929, 1930, and 1931, and more than that amount is represented by accounts where credit had been cut off from the debtor not later than 1932; and petitioner has not shown the amounts marked off in 1934 not to be included in such old accounts. Moreover, there is no evidence as to what efforts were made by the collecting agency to realize upon the accounts. A person of ordinary prudence, under similar circumstances, would have ascertained worthlessness prior to the taxable year. *Ellen Hyde Scovill*, 36 B. T. A. 1214.

Under such circumstances, we hold that the petitioner has not shown error in the determination made as to bad debts by the respondent.

■ The last question for our consideration is as to whether certain losses are subject to the limitation on capital losses. First, claim is made that electric water coolers were property held primarily for sale to customers in the ordinary course of trade or business, and were not therefore capital assets. These water coolers, however, were put out by the petitioner in order to sell spring water, under a written contract which very plainly, we think, provides *primarily* that the contract is one of leasing and not of sale and that the sale is secondary. In addition to the fact that the contract throughout refers to the parties as lessor and lessee and to the renting of the water cooler from the lessor for a period of 24 months at a monthly rental, the contract merely gives the lessee an option to purchase. The coolers were purchased in order to sell spring water. We hold that the water coolers were not primarily held for sale in the ordinary

course of trade or business, and that they were capital assets, under section 117 (b) of the Revenue Act of 1934.

Secondly, petitioner contends that certain beer kegs and cases were also property held by the taxpayer primarily for sale in the ordinary course of trade or business, and were not capital assets. These kegs and cases were used in selling beer to customers. A deposit was made for each by the buyer of beer contained therein, and a credit given for the deposit when the barrel or keg was returned. When the petitioner discontinued the manufacture of beer, the kegs and cases were sold. This evidence, in our opinion, clearly fails to demonstrate that these kegs and cases were primarily held for sale in the course of trade or business, and respondent's denial of such claim is affirmed.

The petitioner on brief concedes respondent's position that losses on certain fillers are capital losses, and as to the losses on such fillers respondent's determination is therefore affirmed.

*Decision will be entered under Rule 50.*