CAMPBELL TRANSPORTATION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 100296, 100297.   Promulgated January 23, 1941.

*John A. McCann, Esq.,* and *William B. Hanson, C. P. A.,* for the petitioner.

*William A. Schmitt, Esq.,* for the respondent.

420

OPINION.

DISNEY: The question here presented is whether the petitioner is entitled to credit under section 26 (c) (2) of the Revenue Act of 1936,[1] for the amount of $33,880 set aside by the petitioner during 1936 and paid to the lessor on December 30, 1936 (though not due until March 1, 1937), as rental, and $8,747.57 set aside and paid in 1936 upon amortized life insurance premiums on the life of its general manager; and $6,120 rental set aside during 1937 and paid

---

[1] SEC. 26.   CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

\* \* \* \* \* \* \*

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits.   As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

February 25, 1937, $42,328.77 set aside as rental during 1937 and paid December 30, 1937, on account of rental due March 1, 1938, and $9,514 annual premium on the life insurance policy. In other words, the question is whether the contract, consisting of lease, declaration of trust, and acceptance thereof, constitutes a contract expressly dealing with the disposition of earnings and profits of the taxable years and requiring them to be paid or irrevocably set aside, within the taxable years, in discharge of a debt.

In these proceedings there is no dispute about the fact that the amounts were set aside, and were paid, nor that the contract was executed prior to the date required by statute.

The petitioner, citing *Tyler* v. *United States*, 281 U. S. 497, argues, in effect, that as an "eminently practical" matter of taxation it was, regardless of the absence from the contract of express words required by the statute, required to set aside and pay the rental on the dates due in order to keep its river equipment; that such river equipment was its source of income; that such income and the retention of the equipment depended on the making of the payments as due under the lease; that such payments were due on February 25 and August 25 of each year; that the only way "in all reasonable possibility" that the February 25 payment could be made was to accrue and set aside part of it before the close of the preceding calendar year (the petitioner being upon the calendar year basis) because its income from January 1 to February 25 was clearly insufficient for the payment; that it could not sell its equipment without violating the terms of the lease; and that it could not pay its earnings out in dividends. Petitioner points out that in *G. B. R. Oil Corporation*, 40 B. T. A. 738, the express words "earnings and profits" are found not to be requisite and contends that, as in that case it was said that "the language of the assignments was certainly broad enough to include the taxable year 1936 and the parties have so construed the contract", so here the provision as to payment of rentals was broad enough to require the setting aside of current earnings to pay them, and that the parties here so construed the instant contract.

We are unable to agree with this contention. In the *G. B. R. Oil Corporation* case the language was considered sufficiently broad for the reason that *all* of the company's receipts from the property purchased, comprising the petitioner's total income, with the exception of $154, were required to be paid to the creditor. Obviously "all receipts" were properly considered to cover "earnings and profits." Here there is no requirement that any receipts, earnings, or profits be devoted to the payment of rentals under the lease, but we find merely an ordinary provision for payment of rentals. The petitioner had other assets with which the rentals might have been paid

and perhaps, at least in part, were paid. It had large assets on January 1, 1936, prior to the contract here involved, including cash of $44,603.86, more than the $33,880 set aside during 1936 and paid on December 30, 1936, and on December 31, 1936, still had $13,630.69. It is obvious that the $33,880 may have been paid, not with earnings or profits of 1936, but with such cash or with other assets on hand January 1, 1936, and not covered by the agreement here considered, and that the same is true of the payments on rental made in 1937. Moreover, there was under the agreement no *requirement* that *any* payment here involved (except possibly insurance hereinafter discussed) be made or amount irrevocably set aside during 1936; for, although the 2¼ percent interest due August 25, 1936, amounted to about $13,500, it is stipulated that the $33,880 paid December 30, 1936, was not due and payable until March 1, 1937. The mere fact of payment or setting aside of funds does not satisfy the terms, and we think the intent, of the statute. Unless it was *required* by the contract to be paid or irrevocably set aside, the petitioner would be free to elect whether to so treat its earnings or to pay dividends. Such is not the situation contemplated by the statute, which concerns itself, as we said in the *G. B. R. Oil Corporation* case, with contracts which "*inevitably require* in their performance a drawing on current earnings." (Italics supplied.) The use of the word "irrevocably" indicates that no election was intended to be within the taxpayer's power. We think it clear that here there was no such inevitable drain upon the current earnings or profits as to apply the statute, as to rental payments in 1936. That a payment was required to be made February 25, 1937, is not sufficient. Petitioner says its income in the interim was not sufficient to make the payment. If that were material, as we think it plainly is not, there is no evidence to that effect. The income during that period may have been much more than the payment to be met. The same thought applies to the payment which was due March 1, 1938, but accumulated and paid December 30, 1937.

As to the payments to provide life insurance upon the life of petitioner's general manager, under the agreement, we think the same general thought above expressed clearly applies—the contract did not require such expense to be from the earnings or profits of the years here involved, but only that they be, in some manner, paid. As to whether there was "a debt" to the extent (one-half) that the insurance was payable to the petitioner itself, and not the lessee, may well be questioned, but is not necessary of decision here, under our conclusion above. Moreover, since the agreement provided for payment of the amount of the insurance premiums only "as and when demanded", it seems clear that there is no contractual requirement that the amounts be paid in the taxable years here involved, and that the statute therefore does not

apply. We can discern no requirement that petitioner's earnings and profits during the taxable years be devoted to payment of insurance. Like the rental payments, the insurance was not payable from any particular fund. The petitioner's undivided profits of $68,020.43 on hand January 1, 1936, prior to the agreement here involved, as well as other assets then appearing, may have been applied either to insurance or rentals; certainly it *could* have been so utilized—which takes away the *requirement* or necessity of using current earnings or profits. During 1936 it appears that $50,000 was paid into surplus, since that amount of "paid in or capital surplus" appears on January 1, 1937, where none had appeared before. Moreover upon that date there was $133,659.17 earned surplus and undivided profits, as well as other assets above referred to. Payment therefrom in 1937 would not have been from current earnings or profits. This serves to emphasize the fact that throughout the taxable years here involved, though the petitioner was under a duty to make certain payments, there was neither express nor implied requirement that they be made from the earnings or profits of the taxable years. The creditor could not, we think, have prevented distribution of dividends. Its right was merely to payment, however made. Under all of the facts appearing herein, in our opinion there was not, in the contract involved, that requirement of use or irrevocable reservation of current earnings and profits which, within the intendment of the statute, forms the basis for the credit claimed. Therefore,

*Decision will be entered for the respondent.*